UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
BETA GROUP, INC.; BETA GROUP INC. )
EMPLOYEE STOCK OWNERSHIP PLAN;   )
FRANK J. ROMEO,                  )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )   C.A. No. 15-213 WES
                                 )
STEIKER, GREENAPLE, & CROSCUT,   )
P.C.; SHARED EQUITY STRATEGIES,  )
INC.; SES ADVISORS; JAMES G.     )
STEIKER; ROBERT W. EDWARDS; STEVEN )
B. GREENAPPLE; TABITHA M. CROSCUT; )
ROBERT E. MASSENGILL; BRIAN WURPTS;)
DOUG CANNON; MARK R. KOSSOW;      )
JOHN DOES 1-10,                   )
                                  )
          Defendants.             )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

       Magistrate Judge Lincoln D. Almond filed a Report and
Recommendation ("R&R") (ECF No. 54) with respect to Defendants'
Motion To Dismiss ("Motion") (ECF No. 39).  He recommends that
the Court:  (1) grant Defendants' Motion To Dismiss Individual
Defendants James G. Steiker, Robert W. Edwards, Steven B.
Greenapple, Tabitha M. Croscut, Robert E. Massengill, and Doug
Cannon (collectively "Individual Defendants"); and (2) deny
Defendants' Motion in all other respects.  In response to the

R&R, three separate objections were timely filed.[1]

Plaintiffs object (ECF No. 55) to Magistrate Judge Almond's recommendation that the Court dismiss without prejudice Defendants James Steiker, Robert Edwards, Steven Greenapple, Tabitha Croscut, Robert Massengill, and Doug Cannon. (Mem. in Supp. of Pls.' Obj. to R. & R. 1-2, ECF No. 55-1.) To this end, Plaintiffs posit that Magistrate Judge Almond: (1) "failed to adequately consider the Amended Complaint's allegations that the Defendants deliberately created a structure . . . intended to obscure what errors were committed by which of the Individual Defendants . . . ."; and (2) neglected to appreciate that ERISA encompasses liability for both active involvement in fiduciary breaches or passive supervision by failing to correct subordinate-made errors. (Id. at 2-4.)

The Court endorses Magistrate Judge Almond's recommendation that Plaintiffs failed to lodge plausible claims against Individual Defendants. To fulfill the demands of notice pleading, "a plaintiff cannot 'lump' multiple defendants together and must 'state clearly which defendant or defendants committed each of the alleged wrongful acts.'" Canales v. Gatzunis, 979 F. Supp. 2d 164, 170 (D. Mass. 2013) (quoting

---

[1] The Court reviews de novo an R&R addressing a dispositive motion, when the parties have properly objected. See Emissive Energy Corp. v. SPA-Simrad, Inc., 788 F. Supp. 2d 40, 42 (D.R.I. 2011); Fed. R. Civ. P. 72(b)(3).

<u>Bagheri v. Galligan</u>, 160 F. App'x 4, 5 (1st Cir. 2005)); <u>see</u> <u>also</u> <u>Atuahene v. City of Hartford</u>, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard . . . ."). Plaintiffs have not cleared this hurdle. Moreover, Plaintiffs' argument that it is impossible to uncover what role each Individual Defendant played in the alleged misconduct is belied by Plaintiffs' ability to specifically pinpoint the role played by Defendants Wurpts and Kossow.[2] (<u>See</u> Am. Comp. ¶¶ 65-71.)

Defendant SES Advisors objects (SES Obj., ECF No. 56) to Magistrate Judge Almond's recommendations that the Court deny the Motion as it pertains to Count I of Plaintiffs' Amended Complaint and to the dismissal of Plaintiffs Beta Group, Inc. Employee Stock Ownership Plan ("Plan"), and Frank J. Romeo. Similarly, Defendant Steiker, Greenapple, and Croscut, P.C.

---

[2]    The Court acknowledges that Individual Defendant Edwards's dismissal from the case presents a closer question. However, that buried in a sea of generalized allegations concerning "Defendants" the Amended Complaint once mentions Edwards, (<u>see</u> Am. Compl. ¶ 76), does not suffice to deny Defendants' Motion with respect to him. In any event, Plaintiffs fail to press a specific objection with respect to Defendant Edwards, so any argument specific to him is waived. <u>See</u> <u>Cortes-Rivera v. Dep't of Corrs. & Rehab.</u>, 626 F.3d 21, 27 (1st Cir. 2010).

("SGC") separately object (SGC Obj., ECF No. 57), largely contesting the same aspects of the R&R as Defendant SES Advisors. Because SES Advisors' and SGC's Objections are duplicative, the Court addresses them together.[3]

Defendants' Objections press two arguments. First, Defendants suggest that they are not functional fiduciaries with respect to the proposed Plan amendment for lack of discretionary authority or control over that particular decision. (SES Obj. 1-2; SGC Obj. 1-4.) Additionally, Defendants aver that Magistrate Judge Almond incorrectly recommends that the Court deny the dismissal of the Plan and Frank J. Romeo as plaintiffs based on the supposedly incorrect application of the collateral source rule because neither plaintiff sustained damages. (SES Obj. 2, 6-7; SGC Obj. 1-2, 9-10.)

As to the first argument, Defendants' attempt to undercut their fiduciary status comes up short. Defendants zero in on their failure to amend the Plan and couch Plaintiffs' allegations as charging them with the mere failure to effectuate the removal of the 4% MPPP contribution at the direction of Plaintiffs. Even accepting Defendants' averment at face value, however, Plaintiffs' Amended Complaint alleges much more than

---

[3] The Court refers to these objections collectively as "Defendants' Objections," and in this context, "Defendants" encompasses SES Advisors and SGC Law Firm.

that.[4]  Indeed, it sets forth, _inter alia_, that Defendants:  (1) designed, implemented, and administered the Plan, including drafting its governing documents; (2) "provide[d] both the advice on how to remove that provision from the Plan and for executing the steps necessary to remove the provision from the Plan"; (3) in failing to remove the provision, failed to file the necessary documents or provide the expected notice to Plan participants; and (4) in the years following Defendants' error, continued to misinform the government, Plaintiffs, and Plan participants about the status of the 4% MPPP contribution.  (Am. Compl. ¶¶ 46, 54-56, 58-61, 64-75.)  At this stage of the case, these allegations suffice to demonstrate that Defendants SES Advisors and SGC "exercise[d] . . . discretionary authority or discretionary control respecting management of [the] plan" or "discretionary authority or discretionary responsibility in the administration of such plan."[5]  _See_ 29 U.S.C. § 1002(21)(A).

Furthermore, even without these additional allegations,

---

[4]  The Court is mindful that, in and of itself, "the act of amending a pension plan does not trigger ERISA's fiduciary provisions."  _See_ _Lockheed Corp. v. Spink_, 517 U.S. 882, 891 (1996).

[5]  That Defendants possessed control or responsibility with respect to the Plan's management or administration is accentuated by the fact that, for example, it took Plaintiffs nearly fifteen years to discover the error.  (_See_ Am. Compl. ¶¶ 49-72, 76.)

Defendants' principal objection has no leg to stand on. Defendants suggest that they lacked discretion or control over the amendment and therefore are not functional fiduciaries because they simply failed to follow Plaintiffs' directive to remove the provision. (SGC Obj. 1, SES Obj. 2.) But courts have recognized a distinction between a decision to terminate or modify a plan, non-fiduciary activities, and "activities undertaken to implement the termination decision [that] are generally fiduciary in nature." See Larson v. Northrop Corp., 21 F.3d 1164, 1169 (D.C. Cir. 1994) (citing Letter on Fiduciary Responsibility and Plan Terminations, 13 Pens. Rep. (BNA) 472 (Mar. 17, 1986)); see also Waller v. Blue Cross of California, 32 F.3d 1337, 1342 (9th Cir. 1994) ("By alleging that Blue Cross breached its fiduciary duty in the selection of annuity providers, plaintiffs attack not the decision to terminate, but rather the implementation of the decision. We believe that this distinction is dispositive and hold that Blue Cross acted in a fiduciary capacity . . . ."); Gallagher v. Park W. Bank & Tr. Co., 11 F. Supp. 2d 136, 140-41 (D. Mass. 1998) (deeming "failure . . . to circulate the necessary paperwork to memorialize the adoption of a plan it had created was an act of mismanagement, not a decision with regard to plan formation or amendment."). Under this line of cases, Defendants' representation that they were simply tasked with mechanically

effecting the provision's removal, rather than authorizing or controlling the amendment, does more harm than good for their argument. Accordingly, Plaintiffs' breach-of-fiduciary-duty claim clears the plausibility threshold under this theory as well. See Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994) ("[I]f, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss.").

Finally, the Court gleans no error in Magistrate Judge Almond's application of the collateral source rule to decline to dismiss the Plan and Romeo as Plaintiffs. The collateral source rule readily applies in the ERISA context. See, e.g., Merriam v. Demoulas, No. 11-10577-RWZ, 2013 WL 2422789, at *3 (D. Mass. June 3, 2013). To this end, courts have recognized that payments made by a fiduciary or plan sponsor to correct errors connected to the operation of an ERISA-governed plan do not rescind or set off fiduciaries' capacity to recover from actual wrongdoers. See Chao v. Merino, 452 F.3d 174, 184-85 (2d Cir. 2006); Merriam, 2013 WL 2422789, at *3; In re State St. Bank & Tr. Co. ERISA Litig., 579 F. Supp. 2d 512, 517 (S.D.N.Y. 2008). Moreover, even assuming the collateral source rule is inapplicable, the Plan and Romeo are proper plaintiffs. Defendants' errors left the Plan significantly underfunded for several years, which suffices to allege damages at this stage.

See <u>LaRue v. DeWolff, Boberg & Assocs., Inc.</u>, 552 U.S. 248, 256 (2008) (recognizing under ERISA "recovery for fiduciary breaches that impair the value of plan assets . . ."); <u>see also</u> <u>Marks Constr. Co. v. Huntington Nat'l Bank</u>, 614 F. Supp. 2d 700, 708 (N.D. W. Va. 2009) (finding damages where plaintiff "alleged fiduciary misconduct impaired the value of Plan assets . . ."). Moreover, Romeo, as a named fiduciary, is expressly permitted to assert claims for losses on behalf of the Plan stemming from fiduciary breaches.  <u>See</u> 29 U.S.C. § 1132(a)(2).

Accordingly, the Court ACCEPTS the R&R (ECF No. 54) in its entirety and adopts its reasoning and recommendations. Therefore, Defendants' Motion To Dismiss (ECF No. 39) Individual Defendants James G. Steiker, Robert W. Edwards, Steven B. Greenapple, Tabitha M. Croscut, Robert E. Massengill, and Doug Cannon is GRANTED without prejudice.  Otherwise, the Motion To Dismiss (ECF No. 39) is DENIED.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
Chief Judge
Date:  January 18, 2018

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BETA GROUP, INC., et al.                     :
                                             :
            v.                               :        C.A. No. 15-213S
                                             :
STEIKER, GREENAPPLE &                        :
CROSCUT, PC, et al.                          :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is the Motion to Dismiss filed by Defendants Steiker, Greenapple & Croscut, P.C. ("SGC Law Firm"), Shared Equity Strategies, Inc. (a/k/a SES Advisors) ("SES"), James G. Steiker, Robert W. Edwards, Steven B. Greenapple, Tabitha M. Croscut, Robert E. Massengill, Brian Wurpts, Doug Cannon and Mark R. Kossow.  (ECF Doc. No. 39).  Defendants seek dismissal of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff has failed to state any claims upon which relief could be granted. Plaintiffs Object to the Motion to Dismiss.  (ECF Doc. No. 46). Defendants filed separate Reply Memoranda in support of their Motion.  (ECF Doc. Nos. 48, 49).

This Motion has been referred to me for preliminary review, findings and recommended disposition.  See 28 U.S.C. § 636(b)(1)(B); LR Cv 72.  After reviewing the pleadings and arguments of the parties, in addition to performing independent research, I recommend that Defendants' Motion (ECF Doc. No. 39) be DENIED in part and GRANTED in part as set forth herein.

### Background

This matter arises out of Defendants' alleged failure to eliminate from the Beta Group, Inc. Employee Stock Ownership Plan (the "Plan") a mandatory 4% Money Purchase Pension Plan ("4%

MPPP") contribution by Beta for its employees.  Plaintiffs allege that they instructed Defendants to amend the Plan in 2001 to remove the 4% MPPP contribution due to a change in law but that despite Defendants' representation that the 4% MPPP was eliminated, the Plan was not actually amended until 2013.   Plaintiffs contend that they have suffered significant damages as a result, including the entry of a Voluntary Correction Program ("VCP") between Beta and the IRS by which Beta was required to make corrective contributions, with interest, to the Plan.

## II.     Facts

The following factual allegations are gleaned from Plaintiffs' Amended Complaint and, pursuant to Rule 12(b)(6), Fed. R. Civ. P., are accepted as true for purposes of considering the instant Motion to Dismiss.  Plaintiff Beta Group, Inc. ("Beta") is a Delaware business corporation with its principal office located in Lincoln, Rhode Island. Beta is the Plan Sponsor, Plan Administrator and a Named Fiduciary of the Plan.  (ECF Doc. No. 35 at ¶ 11). The Plan is a defined contribution retirement plan, governed by ERISA. Id. at ¶ 12.   Plaintiff Frank J. Romeo is the Trustee and a Named Fiduciary of the Plan. Id. at ¶ 13.  SGC Law Firm is a Pennsylvania professional corporation with multiple offices, including in Massachusetts. SGC Law Firm was previously known as Steiker, Fischer & Olson, P.C. and Steiker, Fischer, Edwards & Greenapple, P.C. Id. at ¶ 14.   SES is a Pennsylvania corporation with multiple offices, including in Massachusetts. Id. at ¶ 15.  Defendant SES is headquartered in Pennsylvania with multiple offices throughout the country. Id. at ¶ 16. Defendant James G. Steiker ("Steiker") is a principal of both SGC Law Firm and SES. Id. at ¶ 17. Defendant Robert W. Edwards ("Edwards") is or was at relevant times a principal of SGC Law Firm and SES.  Id. at ¶ 18.  Defendant Steven B. Greenapple ("Greenapple") is a principal of SGC Law Firm and SES. Id. at ¶ 19.  Defendant Tabitha Croscut ("Croscut") is a principal of SGC Law Firm and SES. Id. at ¶ 20.  Defendant Robert E. Massengill ("Massengill") is a former principal of SES. Massengill was President and a Director of SES when some or all of the events alleged in this

Amended Complaint occurred. Id. at ¶ 21.  Defendant Brian Wurpts ("Wurpts") is a former principal and Vice President of Plan Administration Services of SES.  Id. at ¶ 22.  Defendant Doug Cannon ("Cannon") is a principal of SES. Cannon was President of Plan Services for SES when some or all of the events alleged in this Amended Complaint occurred. Id. at ¶ 23.  Defendant Mark R. Kossow ("Kossow") is a former attorney employee of SGC Law Firm and a principal of SES. Id. at ¶ 24.

Plaintiffs assert that Defendants provide or have provided services directly to the Plan and to Beta, or were responsible for overseeing, managing, investigating and monitoring the services provided to the Plan and to Beta. In providing services to the Plan, Defendants are parties in interest within the meaning of 29 U.S.C. § 1002(14).  Id. at ¶ 26.  SGC Law Firm and SES are corporate entities that relied directly on the other Defendants, named herein, to carry out their fiduciary responsibilities under the Plan and ERISA and the acts of their officers and employees alleged herein are the acts of the corporate entities.  Id. at ¶ 27.

Plaintiffs allege they were never informed by Defendants as to which particular lawyers at SGC Law Firm were performing the legal work for the Plan, including the work that gives rise to the events alleged herein. Plaintiffs or their employees or representatives were informed by Defendants that all issues with the Plan or its operation were to be raised with Defendant Wurpts and that he would ensure that all issues were addressed by SES or SGC Law Firm. Defendants did not identify the specific individual lawyers who would resolve legal questions and issues related to the Plan. Plaintiffs contend Defendants created this structure to deliberately obscure who performed the legal work, whether the legal work was done at all, and whether the legal issues were ever addressed by the law firm rather than by SES itself. Plaintiffs claim SES and the SGC Law Firm effectively operated in tandem and without distinction in the administration of the Plan. Id. at ¶ 30.

According to Plaintiffs, individual Defendants Steiker, Edwards, Greenapple, Crosscut, Kossow, as well as the Doe Defendants who were employed by or were principals of the SGC Law

Firm (referred to collectively as the "Lawyer Defendants") had an obligation under these circumstances to properly perform the legal work brought to them concerning the Plaintiffs and the Plan, to supervise the legal work of their subordinates and those in the SGC Law Firm who performed any of the legal work at issue, to ensure that the legal work assigned to the Firm in that manner was properly and timely done, and to ensure that the legal work for the Plaintiffs and the Plan was handled correctly by the SGC Law Firm.  They contend that each of these Defendants failed to do so, directly causing the losses suffered by Plaintiffs.  Id. at ¶ 31.  They also contend that SGC Law Firm and the Lawyer Defendants, on the one hand, and SES on the other, effectively operated interchangeably and as alter egos.  Id. at ¶ 32.

The Plan is sponsored by Beta. Id. at ¶ 33. The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2). Id. at ¶ 34. The Plan was adopted by the Board of Directors of Beta on December 29, 1999 with an effective date of January 1, 1999. Id. at ¶ 35. On December 29, 1999, the Plan borrowed $1,575,000.00 from the Company at 6.5% interest, repayable in annual installments over nearly eighteen years from 1999 to 2017 and used the proceeds to purchase all of the issued and outstanding stock of Beta from its shareholders. Id. at ¶ 36.  The Plan is a qualified plan under 26 U.S.C. § 401.  Id. at ¶ 37.  The Plan is intended to constitute an employee stock ownership plan or ESOP within the meaning of 26 U.S.C. § 4975(e)(7). Id. at ¶ 38.   The Plan received an initial determination letter from the Internal Revenue Service ("IRS") dated September 14, 2000, regarding its satisfaction of applicable tax qualification requirements under the Internal Revenue Code. Id. at ¶ 39.   The Plan covers eligible employees and retirees of Beta and its subsidiaries and affiliates. Id. at ¶ 40.

Beta is the Plan Sponsor of the Plan.  Beta is the Plan Administrator of the Plan pursuant to the terms of the Plan's current Plan document. Id. at ¶ 41, 42.  Beta is a Named Fiduciary of the Plan, as defined in 29 U.S.C. § 1102, pursuant to the terms of the Plan's current Plan document. Id. at ¶ 43.

Romeo is the Trustee of the Plan pursuant to the terms of the Plan's current Plan document. Id. at ¶ 44. Romeo is a Named Fiduciary of the Plan, as defined in 29 U.S.C. § 1102, pursuant to the terms of the Plan's current Plan document. Id. at ¶ 45.  SGC Law Firm and SES were retained to provide financial, legal, recordkeeping and advisory services to design, implement and administer the Plan in a service agreement dated May 28, 1999. Id. at ¶ 46.

SGC Law Firm was retained again in a Service Agreement dated April 6, 2012 and continues to provide services related to the Plan. Id. at ¶ 47.  SES was retained again in a Service Agreement dated January 20, 2012, and continues to provide services related to the Plan. Id. at ¶ 48.  The Plan's governing document was drafted by Defendants.  Id. at ¶ 49.

Section 4.01 of the Plan's original 1999 plan document states:

> The Company shall make a Money Purchase Pension Plan contribution to the Trust Fund for each Plan Year to be allocated to the Account of each Participant eligible to receive such allocation under Section 3.02 equal to four (4) percent of the total Compensation of all Participants eligible to receive an allocation under Section 3.02.

Id. at ¶ 50.

Beta's contributions to the Plan exceeded 4% in Plan Years 1999 and 2000. Id. at ¶ 51.  The 4% MPPP contribution was described in the initial Summary Plan Description distributed to Plan participants in 1999 ("1999 SPD").   Id. at ¶ 52.   In 2001, Beta instructed, and delegated to, Defendants to amend the Plan to eliminate the mandatory 4% MPPP contribution, as the feature was no longer required because of a change in law. Id. at ¶ 53.

Plaintiffs claim that an Amendment and Restatement of the Plan was provided to Beta by Defendants that eliminated the 4% MPPP contribution. The document was executed in 2002, effective to January 1, 2001, and the signature page was provided to Defendants. Id. at ¶ 54. Defendants maintained multiple drafts of the 2002 Amendment and Restatement in their files, and attached the signature page provided to them to a version of the Amendment and Restatement that

failed to eliminate the 4% MPPP contribution from the Plan. By doing so, Defendants exercised authority control, and responsibility over management of the Plan and administration of the Plan. Id. at ¶ 55.   From that time forward, Beta, and its corporate officers, held the belief that the 4% MPPP contribution had been eliminated from the Plan. Id. at ¶ 56.   From 2001 on (to at least 2012), contributions made to the Plan did not meet the 4% MPPP contribution requirement. Id. at ¶ 57.

Beta instructed, and delegated to, Defendants to further implement the change to the Plan, including by providing appropriate disclosures to the Plan's participants that included or should have included a summary of material modifications and/or an updated Summary Plan Description and/or a notice pursuant to 29 U.S.C. § 1054 (commonly known as a "204(h) notice" after the section number in the ERISA legislation before being codified). Id. at ¶ 58.

Plaintiffs assert that Defendants failed to provide the appropriate disclosures to the Plan's participants. By failing to do so, Defendants exercised authority, control and responsibility over management of the Plan and administration of the Plan. Id. at ¶ 59.   The Plan was not properly amended to eliminate the 4% MPPP contribution until 2013. Id. at ¶ 60.   Each of the Individual Defendants who were principals of or employed by SES and/or SGC Law Firm and were involved directly with the services provided to the Plan and Plaintiffs, failed to properly amend and to otherwise properly administer the Plan. All other Individual Defendants had an obligation to properly oversee the work done for Plaintiffs by their respective firms, to investigate the work done for the Plan and Plaintiffs, to monitor the work done for the Plan and Plaintiffs and to uncover and correct in a timely manner the errors, omissions and fiduciary breaches committed by their firms and the other Individual Defendants.

Plaintiffs assert that Defendants concealed from them the failure to amend the Plan. Id. at ¶ 64.   On July 19, 2007, Donna Lantagne ("Lantagne") of Beta sent an email to Defendant Wurpts informing him that a Plan participant had raised the issue of the 4% MPPP contribution found in the

1999 SPD.  Id. at ¶ 65.  The same day, Wurpts responded "[t]he four percent contribution hasn't applied since 1999. I'll draft a letter explaining this with a copy of the amendment to the SPD [Summary Plan Description]."  Id. at ¶ 66.

On September 5, 2007, Wurpts provided that follow-up and stated "most important of all is that the four percent contribution requirement was eliminated in [Plan Year] 2001. The current version of your SPD should not contain the language regarding the four percent contribution." Id. at ¶ 67.  The SPD referenced by Wurpts in his September 5, 2007 communication had never been sent to the Plan participants by Defendants. Plaintiffs were not aware of this at that time, or at any time prior to learning from Defendants on May 30, 2012, that Defendants had not, in fact, ever eliminated the 4% MPPP contribution from the Plan as Defendants had stated. Wurpts' statements of July 19, 2007 and September 5, 2007, were false and were intended to conceal from Beta and from the Plan that Defendants had failed to amend the Plan to eliminate the 4% MPPP contribution as instructed, and had failed to provide appropriate disclosures to the Plan's participants.  Id. at ¶ 69.

By the year 2007, at the latest, Wurpts had informed Plaintiffs that the 4% MPPP was not in the Plan and had not been in the Plan since 2001. Id. at ¶ 70. However, on January 31, 2008, Defendant Kossow submitted a determination letter application to the IRS that included the 4% MPPP contribution in Section 4.01 of the Plan. Defendants failed to correct their previous statements to Beta and to the Plan made in 2007 at that time, even though they clearly knew at that point that the 4% MPPP contribution was still part of the Plan's terms.  Id. at ¶ 71.  The concealment is also further demonstrated by the fact that the Form 5500, Annual Return/Report of Employee Benefit Plan, submitted to the IRS and the Department of Labor ("DOL") each year did not disclose the continued existence of the 4% MPPP feature of the Plan that Defendants had failed to remove. Defendants were responsible for completing and filing the Form 5500 each year. The Defendants, in this manner,

indicated to any reader of the Form 5500, including the Plaintiffs, that the 4% MPPP feature had been removed from the Plan when, in fact, it had not been removed. Id. at ¶ 72.

Plaintiffs did not discover the failures of Defendants until a meeting that occurred on May 30, 2012, when Defendants informed Beta of their failure to properly amend the Plan and their failure to provide appropriate notice to the Plan's participants. At that time, one or more Defendants specifically requested a meeting with Plaintiffs to inform Plaintiffs that this had occurred. Defendants had never previously informed Plaintiffs that the 4% MPPP provision had not been removed from the Plan. Prior to that 2012 meeting, Defendants had never informed Plaintiffs that the Plan had not been amended to eliminate the 4% MPPP contribution. Defendants either were or always should have been aware, in the exercise of reasonable diligence, that such provision had never been eliminated from the Plan. Id. at ¶ 73.  Plaintiffs relied upon Defendants for both advice and execution concerning the 4% MPPP contribution and its removal from the Plan. At all relevant times prior to May 30, 2012, Defendants advised that the contribution provision had been removed from the Plan and acted towards Plaintiffs as though that had occurred.  Id. at ¶ 74.

Plaintiffs did not discover this until Defendants' acknowledged on May 30, 2012, that they had never actually removed the 4% MPPP contribution from the Plan. Plaintiffs relied on Defendants to provide both the advice on how to remove that provision from the Plan and for executing the steps necessary to remove that provision from the Plan. Plaintiffs did not learn of the failures at issue until May 30, 2012, despite acting with due diligence and could not have learned of it before then in the exercise of reasonable diligence under these circumstances.  Id. at ¶ 75.  Defendants attempted to remedy their errors and sought to correct their mistakes. Defendant Edwards had substantial responsibility for this work. Defendants failed to correct the mistakes, and their efforts to do so prolonged the period of time that the Plan was at risk of disqualification and deemed to be in noncompliance. Defendants' efforts in this regard during this time period were intended to reduce

Defendants' potential liability, and were not performed for the sole interest and benefit of Plaintiffs. Defendants' actions in this regard further breached their fiduciary duties as well as their legal, professional and contractual obligations owed to Plaintiffs, and further fell below their professional standard of care. Plaintiffs allege they suffered increased liabilities and losses as a result of Defendants' alleged fiduciary breaches, actions, errors and omissions. Id. at ¶ 76. Additionally, the failure of SES, SGC Law Firm and the Individual Defendants to properly administer the Plan and to properly monitor and oversee the work of their firms and colleagues, resulted in the errors continuing for years longer than necessary, which increased the losses to the Plaintiffs. Id. at ¶ 77.

Since learning of Defendants' mistakes in this regard on May 30, 2012, Plaintiffs have pursued efforts to remedy those mistakes, including by means of submissions to the IRS. Although the IRS has approved a correction to the Plan related to the errors of the Defendants, this correction will not ameliorate any of the harm to Plaintiffs caused by Defendants' acts, errors or omissions. Plaintiffs have incurred significant legal fees and costs in this effort, which were proximately caused by Defendants' acts, errors and omissions. The harm to Plaintiffs, and losses they may suffer, are ongoing, and have not been finally established. Plaintiffs have already, however, suffered significant legal fees, been forced to pay corrective contributions and interest to the Plan and incurred other costs as a result of Defendants' fiduciary breaches and other acts, errors and omissions. All of these present and potential future losses are a direct and proximate result of Defendants' fiduciary breaches and their other acts, errors and omissions. Id. at ¶ 78. Plaintiffs have so far been required to pay $496,738.37 towards remedying the errors committed by the Defendants in the form of corrective contributions and interest to the Plan required by the IRS, and either have or will shortly make substantial additional payments to the IRS, in the form of taxes, interest, and penalties, due to the Defendants' actions and errors, including $423,998.09 in excise taxes. Id. at ¶ 79. Plaintiffs have also incurred substantial legal fees to correct the errors committed by Defendants, including, but not

limited to, fees incurred in obtaining approval by the IRS of corrections to the Plan sufficient to protect the Plan's tax-qualified status.  Id. at ¶ 80.

The amounts paid to date by Plaintiffs, and the additional tax-related liabilities remaining to be paid, were substantially increased by the Defendants' delay in identifying, bringing to Plaintiffs' attention and remedying their errors.  Id. at ¶ 81.  Each of the Lawyer Defendants and the SGC Law Firm were responsible for maintaining and properly amending, or otherwise administering, the Plan or for supervising the work of others responsible for properly amending or otherwise administering the Plan.  Id. at ¶ 82.  Each of the Lawyer Defendants either directly performed the legal work at issue, failed to perform the legal work necessary to properly amend and administer the Plan, failed to oversee and supervise the legal work necessary to properly amend and administer the Plan, failed to identify and correct the erroneous legal work at issue, failed to ensure that legal issues related to the Plan were properly considered and addressed in a timely manner by the SGC Law Firm, failed to properly monitor the legal work necessary to amend and administer the Plan, failed to properly select and oversee lawyers assigned to perform the necessary work, and/or failed to satisfy their duties to ensure that the legal work for, and administration and operation of, the Plan was correct.  Id. at ¶ 83. All Defendants failed to properly administer and amend the Plan as needed, and in accordance with their retention by Plaintiffs.

Each of the Defendants, including the Lawyer Defendants, either provided services directly to the Plan or to the Plaintiffs, or were responsible for selecting, monitoring, overseeing and controlling the work of those Defendants, including the Doe Defendants, who provided those services.  Id. at ¶ 85.  The Department of Labor has characterized Defendants' actions, errors and omissions as fiduciary acts and breaches of fiduciary duty.  Id. at ¶ 87.  A corrective process for remedying the errors committed by the Defendants with regard to the Plan has now been approved by the IRS and is in the process of being effectuated by Plaintiffs and their representatives. Dependent

upon certain variables, the full cost of remedying the problems with the Plan caused by Defendants will exceed $1,000,000.00, and Plaintiffs have already made a substantial payment to remedy the errors. Id. at ¶ 88.

### III.    Standard of Review

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994).  If under any theory the allegations are sufficient to state a cause of action in accordance with the law, the motion to dismiss must be denied.  See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995).  While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)).  "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss."  Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559).

### IV.    Discussion

### A.    Count I – Breach of Fiduciary Duty

Defendants have moved to dismiss Count I alleging breach of fiduciary duty under ERISA because they are not functional fiduciaries within the meaning of ERISA, 29 U.S.C. §1002 (21)(A), and existing case law.  It is undisputed that Beta and Romeo are the "named fiduciaries" of the Plan. Plaintiffs contend that each of the Defendants is a functional fiduciary of the Plan under ERISA

because they exercised discretionary authority or control respecting management or disposition of

Plan's assets, and/or had discretionary authority in the administration of the Plan.   ERISA states that

a person is a "functional fiduciary" with respect to a plan to the extent:

> (i)      he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any
> authority or control respecting management or disposition of its
> assets, (ii) he renders investment advice for a fee or other
> compensation, direct or indirect, with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so,
> or (iii) he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. §1002 (21)(A).

### (1)      SGC Law Firm and SES Advisors

The Corporate Defendants set forth several arguments as to why they do not fit within the

definition of a functional fiduciary.   First, Defendants argue that they were merely "retained to

provide services" (ECF Doc. No. 40 at p. 10) and that they had no "discretionary authority" with

respect to the failure to amend the Plan in 2001 because they were essentially instructed to make the

Amendment and had no authority to do anything but that single task that they characterize as

"ministerial."   Defendants point to the language contained in the Amended Complaint that states that

Plaintiffs "instructed" and "delegated to" them the task of amending the Plan to eliminate the 4%

MPPP.   (ECF. Doc. No. 49 at p. 6), (citing ECF Doc. No. 35 at ¶¶ 53-56).   Defendants assert that

there is ample case law supporting a finding that an entity or individual has no "discretionary

authority" or control when it is following specific instructions.   (See ECF Doc. No. 49 at pp. 3-7).

Nevertheless, the Amended Complaint establishes that SGC Law Firm and SES entered into

contracts pursuant to "which they operated and administered the Plan…including the removal of the

4% money purchase contribution."  (ECF Doc. No. 46 at p. 7 citing ECF Doc. No. 35 at ¶¶ 46-49, 53,

58-61, 74).  Plaintiffs allege these Corporate Defendants were retained to provide "advisory services

to design, implement, and administer the Plan."  (ECF Doc. No. 35 at ¶ 46). Plaintiffs' allegation that the Corporate Defendants were charged with the "design, implementation and administration" of the Plan, is a stark contrast to Defendants' claim that the tasks "do not require individual decision-making" and are "inherently ministerial, such as clerical services."  (ECF. No. 49 at p. 3) (citing Wesson v. Jane Phillips Med Ctr., et al., 822 F. Supp. 2d 1170, 1174 (N.D. Okla. 2011)).

At this stage, I find Plaintiffs' well-pled allegations sufficient to clear the 12(b)(6) hurdle.  As the Court of Appeals for the First Circuit noted, "further record development—and particularly input from those with expertise in the arcane area of the law where ERISA's ESOP provisions intersect with its fiduciary duty requirements—seems to us essential to a reasoned elaboration of that which constitutes a breach of fiduciary duty in this context."  LaLonde v. Textron, Inc., 369 F.3d 1, 6-7 (1st Cir. 2004) (internal citations and quotations omitted).  It is plain from the allegations contained in Plaintiffs' Amended Complaint that the Corporate Defendants were engaged by Plaintiffs for their professional expertise and not simply to complete ministerial, non-discretionary tasks.  Accordingly, I recommend that the District Court DENY the Motion to Dismiss Count I as to Defendants SGC Law Firm and SES.

### (2)   The Individual Defendants

Defendants also assert that the Individual Defendants did not have any discretionary authority and should be dismissed from Count I.  Plaintiffs counter that their Amended Complaint sufficiently detailed the claims concerning the actions of the Individual Defendants in either actively committing the fiduciary breaches or having supervisory/managerial authority to prevent the Corporate Defendants from committing the breaches.

After a careful review of the allegations, the Court notes that Plaintiffs Amended Complaint contains allegations specifically tied to Defendants Wurpts and Kossow, but no detailed information as to any of the other Individual Defendants.  For example, Plaintiffs assert that they were instructed

to raise all issues with the Plan or its operation with Defendant Wurpts and that he would ensure that all issues were addressed by SES or SGC Law Firm.  (ECF Doc. No. 35 at ¶ 29).  Plaintiffs also claim they contacted Defendant Wurpts in 2007 and he responded by stating that the 4% MPPP has not been in the Plan since 2001.  Id. at ¶¶ 65-70.  As to Defendant Kossow, he is alleged to have submitted a letter to the IRS in 2008 that included the 4% MPPP.  Id. at ¶ 71.  The alleged actions of these two Defendants form a significant part of the Plaintiffs' claims, and at this stage, are sufficient to withstand the Motion to Dismiss.  See Dardaganis v. Grace Capital Inc., 889 F.2d 1237, 1242 (2nd Cir. 1989) (individual within corporation held to be functional fiduciary where contract provided that he would "personally supervise and manage the Account" and he acknowledged that he personally exercised discretion over the Fund.)

As to the remainder of the Individual Defendants, however, the allegations are not "sufficiently precise" at this juncture to raise a right to proceed on this claim.  Plaintiffs concede that although they "cannot definitively allege…which of the individual defendants are liable…" they have alleged enough to state a plausible claim that each Defendant is potentially liable as a fiduciary. (ECF Doc. No. 46 at p. 9).  This Court disagrees. This type of speculative, catch-all pleading simply fails to meet the applicable plausibility standard established by the Twombly/Iqbal decisions.  As a result, I recommend that the District Court DENY the Motion to Dismiss Count I alleging Breach of Fiduciary Duty against Defendants Wurpts and Kossow and GRANT the Motion to Dismiss as to the remaining Individual Defendants without prejudice.

**B.     Counts IV and V – Fraud/Misrepresentation and Silent Fraud**

Counts IV and V of Plaintiffs' Amended Complaint allege fraud, concealment and misrepresentation – allegations that trigger the pleadings requirements contained in Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). Defendants assert that these claims should be dismissed for failure to meet these particularity requirements.  Plaintiffs object.

A brief recitation of the facts at issue in Counts IV and V is warranted.   In the Amended Complaint, Plaintiffs allege that in 2001, Defendants provided to Plaintiffs an Amendment and Restatement of the Plan that eliminated the 4%.   (ECF Doc. No. 35 at ¶ 54).   Defendants were instructed to provide Plan participants with a Summary Plan Description or notice pursuant to 29 U.S.C. § 1054, but they did not do so.  Id. at ¶ 58.   In July 2007, Beta raised the issue of the 4% MPPP contained in the 1999 SPD and Defendant Wurpts indicated that the 4% MPPP had been eliminated in 2001 and "the current version of your SPD should not contain the language regarding the four percent contribution."   Id. at ¶ 67.   Nevertheless, Plaintiffs allege that Defendant Kossow submitted a determination letter application to the IRS that included the 4% MPPP on January 31, 2008. Id. at ¶ 71.   In the "Annual Return/Report of Employee Benefit Plan" that Defendants completed and filed with the IRS and Department of Labor, the 4% MPPP was removed from the Plan.  Id. at ¶ 72.   Therefore, from 2001 on (to at least 2012), contributions made to the Plan did not meet the 4% MPPP contribution requirement.  Id. at ¶ 57.   Plaintiffs did not discover the failures of the Defendants until a meeting that occurred on May 30, 2012, when Defendants informed Beta of their failure to properly amend the Plan and their failure to provide appropriate notice to the Plan's participants. Defendants either were or always should have been aware, in the exercise of reasonable diligence, that such provision had never been eliminated from the Plan. Id. at ¶ 73.

Plaintiffs assert that these facts demonstrate that Defendants were instructed to amend the Plan, that they indicated to Plaintiffs that they had amended the Plan, but that they never did. Plaintiffs also assert that the submission to the IRS in 2008 indicates that Defendants were aware of the error at least by 2008 and did not disclose it to Plaintiffs.   In their Opposition to the Motion to Dismiss, Plaintiffs note that they alleged that "Defendants have made material representations of fact

to them, specifically that the Plan in question was properly amended to eliminate the 4% [MPPP] contribution."  (ECF Doc. No. 46 at p. 13).  Plaintiffs further outline that the Amended Complaint alleges the specific facts supporting the claimed fraud and misrepresentation, who made those misrepresentations and the relevant time period.  "In this Circuit, a plaintiff is required to specify in his pleadings 'the time, place, and content of the alleged false or fraudulent representations.'  Moreover, it is well established that '[w]here multiple defendants are involved, each person's role in the alleged fraud must be particularized in order to satisfy Rule 9(b).'"  W. Reserve Life Assur. Co. of Ohio v. Caramadre, 847 F. Supp. 2d 329, 343 (D.R.I. 2012) (quoting Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir.1991), Loan v. Fed. Deposit Ins. Co., 717 F. Supp. 964, 968 (D. Mass. 1989)). The entirety of the factual allegations is simple and straightforward, and contain more than enough detail to place Defendants on notice and to state legally viable claims, this is all that is required to meet the 9(b) standard.  Accordingly, I recommend that Defendants' Motion to Dismiss Counts IV and V be DENIED.

### C.     Plaintiffs Beta Group, Inc. ESOP and Frank J. Romeo

Defendants' next argument is that the Plan (Beta Group, Inc. ESOP) and its Trustee (Frank J. Romeo) are not proper Plaintiffs.  Defendants note that the Plan has received approval from the IRS for a VCP which will retroactively reimburse the Plan for all required 4% MPPP contributions, thus making the Plan "whole" and "meaning that the Plan has no damages."  (ECF Doc. No. 40 at p. 14). Defendants even assert that the Plan and its participants "received an extraordinary windfall" because Beta paid the Plan and its participants the 4% MPPP contributions and interest that it "would never have been paid but for the fact that this contribution provision was not removed from the Plan in 2001."  (ECF Doc. No. 49 at p. 11).

Plaintiffs' Objection to the argument notes that "every court" that has considered the position set forth by Defendants has "roundly rejected it."  (ECF Doc. No. 46 at p. 11).  Plaintiffs note that

although Beta paid additional taxes and interest to the IRS as well as made corrective contributions to the accounts of individual employees of the Plan, the "collateral source rule" dictates that a plan sponsor and/or fiduciary are still entitled to recover amounts paid as corrective payments from the actual tortfeasors.

The collateral source rule provides that a payment made to an injured party from a source other than the tortfeasor cannot diminish the tortfeasor's liability to the plaintiff. <u>Votolato v. Merandi</u>, 747 A.2d 455, 463 (R.I. 2000). It is without dispute that the collateral source rule is generally applicable in the ERISA context. <u>Merriam v. Demoulas</u>, No. 11-10577-RWZ, 2013 WL 2422789, *3 (D. Mass. June 3, 2013). Thus, the narrow issue before the Court at the dismissal stage is whether the Plan and its Trustee have alleged a cognizable injury.

Based on the allegations contained in the Amended Complaint, I find that Plaintiffs have alleged a cognizable injury, and decline to dismiss the Plan and Mr. Romeo as Plaintiffs at this time. In a relatively recent case from the District of Massachusetts, the defendant argued that "even if the collateral source rule is generally applicable in ERISA cases, it should not apply here because it would provide the Plan a double recovery," the District Court rejected that argument, and noted that, "the entire point of the collateral source rule is that a double recovery for the injured plaintiff is better than a windfall for the tortfeasor." <u>Merriam</u>, 2013 WL 2422789, at *3. Following that reasoning, I recommend that the Motion to Dismiss Plaintiffs Beta Group, Inc. ESOP and Frank J. Romeo be DENIED.

### D. Sufficiency of Facts Against the Defendants

Defendants' final argument is that Plaintiffs' Complaint is deficient because it does not plead a factual basis for all legal claims asserted against each Individual Defendant. (ECF Doc. No. 40 at p. 15). Defendants' Motion makes two separate claims in this regard: First, that "Plaintiffs' Complaint fails the basic threshold requirements demanded by Rhode Island law" because it fails to

"make specific allegations regarding the conduct of each Defendant." Id. at p. 17. Second, Defendants assert that Plaintiffs "refer interchangeably" to SGC Law Firm and SES, despite the fact that they are "separate and distinct corporate entitles" with "differing duties and legal obligations." Id. Plaintiffs object to both of these claimed insufficiencies, noting first that they have pled "sufficient facts to demonstrate a plausible claim against each of the Defendants." (ECF Doc. No. 46 at p. 14). Plaintiffs also contend that the Complaint alleges that SGC Law Firm and SES are "alter egos" with "overlapping ownership and principals, including owners of SES who are also partners in SGC Law Firm." Id.

Turning first to the issue concerning the sufficiency of the allegations against the Individual Defendants, Defendants argue that the Complaint fails to allege any specific allegations connecting Individual Defendants James G. Steiker, Robert W. Edwards, Steven B. Greenapple, Tabitha M. Croscut, Robert E. Massengill and Doug Cannon to the alleged failure to amend the Plan in 2001. (ECF Doc. No. 40 at p. 17). Defendants also contend that the Complaint does not contain sufficient facts to set forth an "act or omission" of Defendants Mark R. Kossow or Brian Wurpts, despite the fact that the Complaint contains specific allegations concerning these two Defendants. Plaintiffs counter that the facts alleged are sufficient and that "further refinement of the causes of action is properly deferred to discovery" because the facts are "solely controlled by and in the possession of the Defendants." (ECF Doc. No. 46 at p. 14). At the present time, the generalized claims that these Defendants were employed by the Corporate Defendants is insufficient to allow the case to proceed against them. As Defendants point out, "[T]he price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999). Accordingly, Defendants James G. Steiker, Robert W. Edwards, Steven B. Greenapple, Tabitha M. Croscut, Robert E. Massengill and Doug Canon should be dismissed without prejudice. As

previously explained, the allegations against Defendants Wurpts and Kossow set forth in the Amended Complaint are sufficiently detailed and specific to survive this 12(b)(6) challenge, and I recommend that they remain as Defendants in the case.

As to the Corporate Defendants, the Court need not travel down the path of parsing the parties' arguments concerning whether SGC Law Firm and SES are alter egos.  Instead, the Court finds that the allegations in the Complaint are sufficiently clear.  Accordingly, I recommend that the District Court DENY the Motion to Dismiss SGC Law Firm and SES from this case.

**Conclusion**

For the foregoing reasons, I recommend that (1) Defendants' Motion to Dismiss Individual Defendants James G. Steiker, Robert W. Edwards, Steven B. Greenapple, Tabitha M. Croscut, Robert E. Massengill and Doug Cannon from this action be GRANTED and that the District Court dismiss these Defendants without prejudice; AND (2) that the Motion to Dismiss be DENIED in all other respects.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


     /s/   Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
July 28, 2017

-19-